# SEEBERGER v. McCORMICK.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 322.  Submitted October 16, 1899. — Decided December 4, 1899.

The contention, even if formally made, that plaintiffs in error were seeking to avail themselves of some right or immunity under the Constitution or laws of the United States, does not give this court jurisdiction to review the judgment of the Supreme Court of a State, where that judgment was based upon a doctrine of general law, sufficient of itself to determine the case.

It having been decided in *McCormick v. Market Bank,* 165 U. S. 538, that the contract of lease there in suit was void, the plaintiff in error in that case commenced this action in a state court in Illinois to recover from citizens of that State the rent for the property which had been intended to be leased to the bank by the void lease, on the ground that they had

· falsely assumed corporate authority to make the void lease. Such proceedings were had in the state courts that judgment was finally rendered by the Supreme Court of that State in McCormick's favor. *Held,* that the question whether the plaintiffs in error rendered themselves liable to McCormick by reason of their false assumption of corporate authority was one of general law, and not one to be solved by reference to any law, statutory or constitutional, of the United States; and that, as no Federal question was in form presented to or passed upon by the state Supreme Court, and because its judgment was based upon matter of general and not Federal law, this court was without jurisdiction to review it.

THIS was an action brought in a state court of Illinois in which Leonard J. McCormick sought to hold Seeberger and others as partners for an alleged false assumption of power as a national banking association.

On January 31, 1893, articles of association were signed and an organization certificate was signed and acknowledged by nine citizens of Illinois, and both were transmitted to the Comptroller of Currency, as required by the Revised Statutes of the United States, for the purpose of making them a national banking association at Chicago by the name of the Market National Bank. At a meeting of the directors of the bank, chosen by the stockholders, and named in the articles of association, a president and cashier were duly elected, and the directors caused a seal to be made for the bank. On February 9, 1893, the president, pursuant to a resolution of the directors, signed and sealed with the corporate seal a lease in writing from Leander J. McCormick to the bank of certain offices in Chicago, "to be used and occupied by said Market National Bank as a banking office, and for no other purpose," for the term of five years from May 1, 1893, at a yearly rent of $13,000. By an agreement made part of the lease, McCormick was to make certain alterations and repairs at his own expense; either party might cancel the lease on May 1 of any year by giving ninety days' notice in writing; and no rent was to. be charged until the bank took possession. On April 12, 1893, the parties made a supplemental agreement, by which McCormick was to make further alterations, the bank paying half the cost thereof. All the alterations and repairs were made by McCormick as agreed; the cost, paid by him, of the

alterations of April 12, 1893, being $2475. On June 22, 1893, the president and cashier, in the name of the bank, took possession of the demised premises, and put in the fixtures and furniture, blank books and stationery, necessary to carry on a banking business, and they were not removed until April 30, 1895.

Of the whole capital stock of $1,000,000, called for in the articles of association, but $331,594 was ever paid in; and the bank was never authorized by the Comptroller of the Currency to commence, and never did commence, the business of banking. The officers of the bank, from time to time, corresponded with McCormick, using letter heads, with the name, location and place of business of the bank and the names of the officers printed thereon, and signing in their official capacity. On August 15, 1893, the officers of the bank informed McCormick that the bank had never been authorized to commence the business of banking, and had no power to enter into the lease, and had abandoned all further proceedings, and offered to surrender the lease. McCormick refused to accept the surrender, and on September 20, 1893, the president caused the key of the office to be left on the desk of McCormick's agent, he refusing to accept it.

On October 4, 1893, the parties agreed in writing that, without prejudice to the rights of either, McCormick should take possession of the premises, and endeavor to lease them and to collect the rent thereof. He made every effort to obtain a tenant accordingly, but was unable to do so. On January 3, 1895, McCormick gave written notice to the president of the bank of his intention to terminate the lease in May, 1895, in accordance with its terms. The cashier paid the rent, according to the lease, until July 22, 1893; but the bank refused to pay any rent subsequently accruing, and never paid its half of the cost of the alterations made under the agreement of April 12, 1893. Thereupon McCormick brought an action against the Market National Bank on July 17, 1895, in the Superior Court of Cook County, Illinois, claiming that he was entitled to recover judgment, at the rate agreed upon in the lease, from July 22, 1893, up to May 1, 1895, and for half of the

cost of changing and repairing the premises. That court refused to hold that McCormick could recover upon the lease as a valid contract, but gave judgment in his favor for the rent from July 22 to August 15, 1893, and for half the cost of the alterations, with interest, amounting in all to the sum of $2548.85. This judgment was affirmed on successive appeals of McCormick, by the Appellate Court and by the Supreme Court of Illinois. 61 Ill. App. 33; 162 Illinois, 100. Thereupon McCormick sued out a writ of error and brought the case to the Supreme Court of the United States, where the judgment of the Illinois courts was affirmed. 165 U. S. 538.

On November 19, 1895, McCormick brought an action in the Superior Court of Cook County, Illinois, against Anthony F. Seeberger and fifteen persons, as copartners doing business in Chicago, Illinois, under the firm name and style of The Market National Bank of Chicago. The defendants were officers, directors and shareholders of the Market National Bank, and in this action McCormick sought to hold them personally for the balance of the rent due under the terms of the lease. The Superior Court rendered judgment for the defendants. McCormick appealed, and the Appellate Court of Illinois reversed the judgment, "found the facts as set forth in the stipulation in the record," and entered judgment against the defendants, and assessed the damages at the amount of the rent stipulated in the lease from August 15, 1893, to May 1, 1895, to wit, $22,208.33. The defendants then took the case to the Supreme Court of Illinois, which affirmed the judgment of the Appellate Court. Thereupon the defendants sued out a writ of error and brought the case to this court; and on October 16, 1899, a motion was made and submitted by the defendant in error to dismiss the writ of error on the alleged ground that no Federal question, sufficient to give this court jurisdiction to review the decision of the state court, was shown by the record.

*Mr. Hiram T. Gilbert* for plaintiff in error.

*Mr. A. M. Pence, Mr. George A. Carpenter* and *Mr. Shirley T. High* for defendant in error.

MR. JUSTICE SHIRAS, after making the above statement of the case, delivered the opinion of the court.

In the suit brought by McCormick against the Market National Bank of Chicago it was held by the Supreme Court of Illinois that the contract of lease sued on was not incidental and necessarily preliminary to the organization of the corporation, and therefore, by virtue of section 5136 of the Revised Statutes, having been executed by the defendant before being authorized by the Comptroller of the Currency to commence the business of banking, did not bind the defendant. That decision being arrived at upon a consideration of the legal import of a statute of the United States, was plainly one involving a Federal question. But it was contended that this court had no jurisdiction to review the action of the state court, because its decision was in favor, in respect to the Federal statute, of the party who had set up and claimed an immunity under it. It was, however, clearly shown by this court that, as the defendants had relied on the statutory prohibition to transact any business until it had been authorized by the Comptroller of the Currency to commence the business of banking, and as the plaintiff had relied on the exception out of that prohibition, that is, had claimed that the lease was " incidental and necessarily preliminary to the organization," and as the decision was against the plaintiff on the latter contention, it was, therefore, a decision against a right claimed by him under a statute of the United States and reviewable by this court on writ of error. *McCormick* v. *Market Bank*, 165 U. S. 538, 546.

McCormick's recovery in that action having been restricted to rent for the time of the bank's actual occupancy of the premises, he brought the present suit against the persons who had taken part in the proposed organization of the bank, charging them as partners doing business in the firm name and style of the Market National Bank of Chicago. He recovered a judgment in the Appellate Court of Illinois. That judgment has been affirmed by the Supreme Court of Illinois, and the case is now before us on a writ of error to the judgment of the state Supreme Court.

The theory upon which this action was maintained in the state courts can be best made to appear by a quotation from the opinion of the Supreme Court:

" The principle is one of agency, and that plaintiffs in error, as the agents of the corporation in making the contract of the lease, by necessary implication asserted to the lessor that they were in fact authorized to cause the lease to be executed by the corporation. Where the contract is made in good faith and both parties are fully cognizant of the facts, and the mistake is one of law only, the result of which is to exonerate the principal from liability, because the agent had no lawful authority to make the contract, it is clear that the agent cannot be held liable, either *ex contractu* or *ex delicto*.

" The Appellate Court was authorized to find, and doubtless did find, that this was not such a case. These directors were charged with knowledge that they had not taken the necessary steps to obtain, and had not obtained, the certificate of the Comptroller necessary to confer power to make the lease, and it was a fair inference for the Appellate Court to draw from the agreed facts that McCormick did not know of this omission until August 15, 1893, several months after the lease was executed and after possession of the premises had been taken by the lessee under it. The stipulation also showed that the plaintiffs in error cancelled their articles of association in July, but remained in possession of the premises until the 15th day of August. They had by resolution authorized and directed the execution of the lease, and there can be no doubt of the legal sufficiency of the evidence to establish an implied warranty on their part of their authority to enter into the lease on behalf of the corporation, if such implied warranty is in law a sufficient ground on which to make them liable to respond in damages to McCormick for a breach of such warranty. . . .

" We are of opinion that upon both principle and authority such an action can be maintained. Indeed, the fraud, if any, arises out of the contractual relations which the parties have assumed. The express contract purporting to bind the principal may be void, but if the agent has given his warranty,

express or implied, that he is authorized by his principal to execute that contract when he has no such authority, we know of no principle in law or logic which would prevent the other party from recovering for the breach of such warranty where injury has been sustained by such breach."

Did such a state of facts and law present a Federal question? Certainly there was no formal allegation in the assignments of error to the judgment of the appellate court that the plaintiffs in error were claiming any immunity under the laws or Constitution of the United States; nor is there any allusion, however distant, in the opinion of the Supreme Court, to any such question. And surely the fact that the defendants had proposed, but had failed, to effect an organization as a banking association under the laws of the United States, did not bestow a Federal character upon their transactions. By withdrawing from their futile attempt to create a corporation under the statutes of the United States, these individual defendants must be deemed to have renounced any right, title or immunity they might have possessed under such organization had it been perfected.

It has been frequently held that the contention, even if formally made, that plaintiffs in error were seeking to avail themselves of some right or immunity under the Constitution or laws of the United States does not give us jurisdiction to review the judgment of the Supreme Court of a State where that judgment was based upon a doctrine of general law sufficient of itself to determine the case. *Beaupré* v. *Noyes*, 138 U. S. 397; *Eustis* v. *Bolles*, 150 U. S. 361; *Pierce* v. *Somerset Railway*, 171 U. S. 641; *Remington Paper Co.* v. *Watson*, 173 U. S. 443.

We think that the question whether the plaintiffs in error rendered themselves liable to McCormick by reason of their false assumption of corporate authority was one of general law, and not one to be solved by reference to any law, statutory or constitutional, of the United States.

As well, then, because no Federal question was in form presented to or passed upon by the Supreme Court of Illinois, as because the judgment of that court was based upon matter of general and not Federal law, we are unable to see that we have

jurisdiction to review that judgment; and the writ of error is accordingly

*Dismissed.*