Seymour v. O. S. Richardson Fueling Co.

| 103 | 625 |
| r205s | 77 |

| 103 | 625 |
| 110 | 454 |

## John Seymour et al. v. O. S. Richardson Fueling Co.

1. EVIDENCE—*Admissions in Litigation Involving the Same Subject-matter and Parties.*—The duly authenticated transcript of the proceedings and decree containing admissions made in a contested litigation involving the same subject-matter as the suit at bar, and between the same parties, is entitled to full faith and credit here, and is properly admitted in evidence.

2. SAME—*Admissions Made in Bill in Chancery.*—The admission of a fact by a party to a suit, is competent evidence, no matter how made; and where the statement or declaration of a party is made in a bill in chancery, that bill is competent evidence to be considered by the jury, who are to determine the weight to be given to the evidence.

3. SAME—*Admissions of One of Several Joint Parties.*—Where the parties have a joint interest in the matter in suit an admission by one is, in general, competent evidence against all.

4. CONSTRUCTION OF STATUTES—*Sec. 18, Chap. 32, R. S.*—It would be a very narrow view of the meaning and intent of the statute to arbitrarily limit the liability of officers, agents or boards of directors to that one of them to whom an order was actually given, whereby a debt was contracted, if the others were actively participating in the conduct of the business with full knowledge of what their agent was doing. In order that a debt may not be "made by them," they must not approve or direct the creation of the indebtedness or have anything whatever to do with it.

5. CORPORATIONS—*Liability of Directors Under Sec. 18 of the General Incorporation Act.*—Directors and officers liable under section 18 of the general incorporation act for debts and liabilities which are contracted by them in the name of the corporation before the certificate of complete organization has been recorded, are not relieved from such liability simply because the creditor may have dealt or contracted with them while acting as officers of a corporation *de facto.*

6. PRACTICE—*Question of Unreasonable and Vexatious Delay.*—The question as to whether there has been an "unreasonable and vexatious delay of payment" is properly submitted to the jury.

7. WORDS AND PHRASES—*What is Not an Unreasonable and Vexa-*

*tious Delay.*—To appear and defend a suit merely, is not unreasonable or vexatious delay.

8. BANKRUPTCY—*Effect of Discharge of Party to Suit.*—The discharge in bankruptcy of one of the parties to a suit covering the debt in controversy has the same effect as where one of three or more obligors has died.

Attachment.—Appeal from the Circuit Court of Cook County; the Hon. EDWARD P. VAIL, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Affirmed in part and reversed in part. Opinion filed October 24, 1902.

Appellee brought this action to recover the price of coal furnished for the steamer " Puritan." It is claimed by appellants that the steamer was owned and operated by a corporation known as the " Seymour Transportation Company," claiming to be organized and existing under the laws of Illinois. It appears, however, that the certificate of incorporation was never filed for record either in the recorder's office of Cook county, where the principal office of the alleged corporation was located, or elsewhere.

The statutory provisions are as follows : " The secretary of state shall thereupon issue a certificate of the complete organization of the corporation, making a part thereof a copy of all papers filed in his office in and about the organization of the corporation and duly authenticated under his hand and seal of state, and the same shall be recorded in a book for that purpose in the office of the recorder of deeds of the county where the principal office of such company is located. Upon the recording of said copy the corporation shall be deemed fully organized and may proceed to business. Unless such company shall be organized and shall proceed to business as provided in this act within two years after the date of such license, then such license to form such association shall be deemed revoked, and all proceedings thereunder void." (Sec. 4, Chap. 32, R. S.)

" If any person or persons being or pretending to be an officer or agent, or board of directors of any stock corporation or pretended stock corporation, shall assume to exercise corporate powers or use the name of any such corporation or pretended corporation without complying with

the provisions of this act, (or) before all stock named in the articles of incorporation shall be subscribed in good faith, then they shall be jointly and severally liable for all debts and liabilities made by them, and contracted in the name of such corporation or pretended corporation." (Idem, Sec. 18.)

C. E. KREMER, attorney for appellants.

HUBERT E. PAGE, attorney for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

The declaration charges the appellants with joint and several liability of officers and directors of a corporation. The ground of alleged liability is that they assumed to exercise corporate powers and used the name of the corporation or pretended corporation without complying with that provision of the incorporation act which requires the certificate of complete organization to be recorded in the office of the recorder of deeds. The certificate was issued May 18, 1892. The debt sued for was contracted in 1895, for coal furnished to the steamer " Puritan." It is contended by appellee that appellants are liable under the provisions of section 18 of the act referred to, because the debt was " made by them and contracted in the name of such corporation or pretended corporation."

Appellants prosecute this appeal from the judgment rendered in the Circuit Court, holding them liable for the debt. All of them were original subscribers to the capital stock of the corporation and continued to be members and stockholders during the years 1894 and 1895, and each of them was during all that time either an officer or director. It is argued in their behalf that as such officers and directors they can not be held jointly and severally liable, inasmuch as the coal was ordered by E. W. Seymour alone, and the others did not actually participate or co-operate in the purchase, nor was there on their part any affirmative voluntary act in connection therewith; citing Lewis v. Montgomery,

145 Ill. 47; Edwards v. Cleveland Dryer Co., 83 Ill. App. 643; Edwards v. Dettenmaier, 88 Ill. App. 366.

It is not disputed that the actual purchase of the coal was made by E. W. Seymour, one of the appellants, who was residing in Chicago and acting as manager of the business of the steamer at that place. The other appellants resided, at the time, in Michigan. It is claimed by appellee, however, that the debt in controversy was in fact contracted by the authority and with the assent of all the appellants. It is said also that appellee had no notice whatever that the steamer " Puritan " was then owned or operated by a corporation, and there is evidence in the record tending to support this claim. As bearing upon the question of how and by whom the steamer was owned and operated, appellee offered in evidence a record of a proceeding in the U. S. District Court for this district, in which appellants filed their petition and libel to limit liability as owners of the steamer " Puritan," particularly specifying the debt here in controversy. In that petition it is set forth that appellants were owners of the steamer " Puritan;" that it had been burned in Manistee Lake, where its remains then lay; that by reason of failure to record the certificate of complete organization, as appellants were informed and believed the " Seymour Transportation Company " had no valid existence; that the steamer had been sold in April, 1892, by John Seymour and Antoine E. Cartier to said company; that the present suit was pending, and that at the time of her loss the steamer was indebted to various persons, who threatened to bring suit against appellants. This petition purports to be signed in behalf of all of the appellants by their counsel, and is verified by the affidavit of E. W. Seymour.

We do not regard the admissions in this petition and the proceedings thereunder as estopping appellants from a denial of their personal liability in the present suit, as appellee's counsel claims. (See " The Benefactor," 103 U. S. 239.) But the record was, we think, admissible in evidence. The petition and libel contained admissions made

in a contested litigation involving the same subject-matter as the suit at bar, between the same parties.   That petition states that appellants were the owners of the steamer when this debt was contracted, and that they desired to limit their personal liability, by virtue of the act of Congress. (U. S. Rev. Stat., Sec. 4282, *et seq.*)   Though it may be true that appellants' names were signed to the petition by their attorneys, it is verified by E. W. Seymour, and there is no claim or pretense that the other appellants were ignorant of its contents or that their names were used without authority from them.   The duly authenticated transcript of the proceedings and decree in that cause is entitled to full faith and credit here, and is properly admitted in evidence.   Litch v. Clinch, 136 Ill. 410, 423, 425.   In Wadsworth v. Duncan, 164 Ill. 360–366, it is said:   "The admission of a party to a suit, of a fact, is competent evidence no matter how made; and where the statement or declaration of a party is made in a bill in chancery, that bill is competent evidence to be considered by the jury, who are to determine the weight to be given to the evidence.   The relevancy of that evidence was as to the declarations therein made as to who were the shareholders at the time.   It was error not to admit the bill in evidence." In Smith v. Henline, 174 Ill. 184–200, it is said:   "Where the parties have a joint interest in the matter in suit an admission by one is, in general, competent evidence against all."   The U. S. District Court found that the steamer was "operated by petitioners, its owners," at the time the debt in controversy was created.   (The Puritan, 94 Fed. Rep. 365.)

It is argued that the debt was not "made by them;" that it was made by E. W. Seymour as agent of a corporation *de facto*, if not *de jure;* that the other appellants had no part in the purchase of the coal.   In Edwards v. Dettenmaier, 88 Ill. App. 366, it is said, "not taking part means not taking any part; not approving or directing the creation of the indebtedness; not having anything whatever to do with it."   It would be a very narrow view of

the meaning and intent of the statute to arbitrarily limit the liability of officers, agents or boards of directors to that one of them by whom an order was actually given, whereby a debt was contracted, if the others were actively participating in the conduct of the business with full knowledge of what their agent was doing. If they ordered or authorized him to buy coal or to manage a steamer for which they knew coal had to be obtained, it is immaterial whether they knew of whom it was purchased or the exact time of the purchase. It is sufficient if they assented to the creation of the debt as individuals, officers or a board of directors. Lewis v. Montgomery, 145 Ill. 30–47. There is testimony tending to show that John Seymour, another of the appellants, was present several times when coal was ordered of appellee, and had himself given an order on one occasion. The latter denies this and states that he had nothing to do during 1895 with the management, operation and navigation of the steamer "Puritan" for which the coal was purchased; that E. W. Seymour purchased the coal, and that he, John Seymour, "knew nothing personally about the purchase of coal for that steamer." There is no evidence that the other defendants had any direct part in ordering the particular coal for which the debt under consideration was contracted, but it does appear that they were all interested and participating in the business of which the operation and management of the steamer " Puritan " was an important factor. E. W. Seymour managed the steamer at Chicago and the other brother in Michigan looked after financial and other matters connected with her operation, receiving " checks from the Chicago office as earnings of the vessel," which they deposited at Manistee. They " used to get letters from E. W. quite often about the business of the boat." There is evidence tending to show also that Mr. Cartier was in Chicago and elsewhere, apparently looking after the boat, and made several trips on her.

It is urged that Elwyn W. Seymour was acting as agent, not of the defendants but of the *de facto* corporation, in

contracting the debt, and that his acts in creating a corporate indebtedness did not create any personal liability against the defendants; citing Lewis v. Montgomery, 145 Ill. 30–47, where it is said that the acts of one constituted by a board of directors the general financial agent of a corporation, are the acts of the corporation, "but they are not the acts of the directors unless commanded or authorized by them." But it is held in Loverin v. McLaughlin, 161 Ill. 417–434, that directors and officers liable under section 18 of the general incorporation act for debts and liabilities which are contracted by them in the name of the corporation before the certificate of complete organization has been recorded, are not relieved from such liability because the creditor may have dealt or contracted with them while acting as officers of a corporation *de facto*. Such, indeed, seems to be the clear meaning of the statutory provision. This suit is brought by a creditor "against individuals assuming to act as agents or officers or directors of a corporation," and when seeking to escape statutory liability, "it is the duty of such persons to prove that their principal had a legal existence and was capable in law of contracting the debt for which they are sought to be held liable. Loverin v. McLaughlin, *supra*. It is not a question as to whether there existed a *de facto* corporation. The statute assumes such existence and provides that the officers or directors shall be liable nevertheless if they "assume to exercise corporate powers or use the name of any such corporation or pretended corporation without complying with the provisions of this act."

It is urged that interest on the account has been improperly allowed. The question was submitted to the jury whether there has been an "unreasonable and vexatious delay of payment." (R. S. Chap. 74, Sec. 2.) This was proper. Levinson v. Sands, 74 Ill. App. 273–276; Sanderson v. Read, 75 Ill. App. 190–194. To appear and defend a suit merely, is not unreasonable or vexatious delay. W. C. A. Works v. Sheer, 104 Ill. 586. But the facts in this case were all before the jury, and we find no sufficient reason to disturb

their finding in this respect. There was delay, and it was for the jury to say whether, under all the circumstances, it was unreasonable and vexatious.

Complaint is made of the admission of certain testimony and of the instructions. We have considered these objections and if it be conceded that some of the objections are well taken, it is nevertheless evident, we think, that such supposed errors were not harmful, and we deem it unnecessary to extend this opinion to consider them in detail.

E. W. Seymour, one of the appellants, filed a plea setting up a discharge in bankruptcy, covering, it is conceded, the debt in controversy. The discharge has the same effect as where one of three or more obligors has died. Judgment in such case may be rendered against the survivors of them. Stevens v. Catlin, 152 Ill. 56–58. As to him the judgment is erroneous and will be reversed. Against the other appellants it must be affirmed.