GUY JAMES CONSTRUCTION COMPANY, Plaintiff-Appellee Cross-Appellant,

v.

TRINITY INDUSTRIES, INC., Defendant-Appellant Cross-Appellee.

No. 80–1322.

United States Court of Appeals, Fifth Circuit.

Unit A

May 8, 1981.

Rehearings Denied July 8, 1981.
See 650 F.2d 93.

---

6. 42 U.S.C. § 2000e–16, as amended by Section 11 of the Equal Employment Opportunity Act of 1972, Pub.L. 92–261, 86 Stat. 111.

Locke, Purnell, Boren, Laney & Neely, John L. Estes, William Andrew Barr, Thomas W. Hughes, Dallas, Tex., for defendant-appellant cross-appellee.

Andress, Woodgate & Lodewick, William Andress, Jr., Dallas, Tex., for plaintiff-appellee cross-appellant.

Before CHARLES CLARK and GEE, Circuit Judges, and SPEARS *, District Judge.

SPEARS, District Judge:

Guy James Construction Company (James) recovered a $252,016.08 judgment for damages sustained when Trinity Industries, Inc. (Trinity) breached a construction contract providing for the timely delivery of trapezoidal steel girders, to be utilized by James in a construction project at Dallas-Fort Worth Regional Airport (DFW). Both parties appealed the amount of damages awarded by the district court. Except for certain items of recovery, which are reversed, we affirm the judgment of the district court.

In 1971, DFW and James entered into a contract for the construction of four taxiway bridges over the public access road bisecting the airport. The contract provided that a designated engineer would represent DFW in all aspects of the bridge construction, and would, accordingly, supervise the construction activities. In addition, James was required to employ an independent testing laboratory to inspect the component construction materials for compliance with manufacturing plans and specifications.

Trinity submitted to James alternative offers for fabrication of the steel girders required for the bridges. These proposals were identical except for a time/price differential; one offer provided for a six week earlier delivery date at a one-half cent per pound higher price, which, based upon the quantity of steel ultimately delivered, amounted to a difference of $17,129.65. Although James accepted neither proposal, it subsequently issued a purchase order incorporating the earlier delivery date and the higher price provisions quoted in one of the original offers. Delivery under this contract was to commence not later than January, 1972, and was to be completed by June, 1972.

During January, 1972, Trinity began delivering the steel girders contracted for. Inspection of the girders, however, revealed that they were not manufactured in accordance with plans and specifications. By order of DFW's engineer representative, the girders were rejected and returned to Trinity. Thereafter, delivery of acceptable steel girders, fabricated by a subcontractor, commenced in December, 1972.

Trinity's failure to timely produce the girders in accordance with the contract prevented James from timely completing performance under its construction contract with DFW, and, pursuant to a provision of the DFW contract providing for absolute liquidated damages of $1,500.00 per day, DFW withheld, because of the delay, $453,000.00 from its payment to James upon completion of the project. James instituted this suit against DFW, Trinity, and various subcontractors and consultant engineers to recover the additional costs occasioned by the delay. The original complaint stated in pertinent part:

As a result of the rejection of the trapezoidal girders by the AIRPORT BOARD'S engineer, JAMES sustained additional and extra costs in the performance of its contract with the AIRPORT BOARD... Plaintiff JAMES, is entitled to recover the above amounts from the Defendant, AIRPORT BOARD; or, in the alternative, is entitled to recover as indemnity, from TRINITY ..., or from

---

* District Judge of the Western District of Texas, sitting by designation

both Defendants, jointly and severally, the full amount of JAMES' said extra cost. . . .

An amended complaint further alleged that:

D/FW has unreasonably and improperly deducted from contract payments due to plaintiff the sum of $453,000.00 assessed as alleged liquidated damages for delayed completion of contract work on the Taxiway Bridges, despite the fact that the delays in completion were the direct and proximate result of errors and omissions on the part of D/FW . . .

This complaint, like the original pleading, requested an alternative judgment against Trinity. Thereafter, all of the defendants, except Trinity, settled with James for a total sum of $424,000.00.

On July 10, 1976, James filed a second amended complaint against Trinity, wherein James held Trinity accountable for the $453,000.00 in liquidated damages retained by DFW. In addition, James sought to recover administrative expenses, and home and site office overhead expenses associated with the additional eleven month construction period. The complaint also charged Trinity with excess welding costs incurred for incorporating the rejected girders into another facet of the construction project.

The district court granted James a partial summary judgment against Trinity for breach of contract. In a subsequent bench trial on the issue of damages, James was permitted to recover from Trinity the reasonable expenditures made in good faith by James as a consequence of Trinity's breach. The following recoverable expenditures were awarded:

| | |
|---|---|
| Liquidated damages | $102,162.43 |
| Home office overhead | 34,450.00 |
| Field office overhead | 11,500.00 |
| Early delivery premium | 17,192.65 |
| Prejudgment interest[1] | 86,711.00 |

This appeal from the bench trial followed.

## I. Election of Remedies

Initially, we must determine whether this suit was barred, as a matter of law, by the Texas "election of remedies" doctrine. The doctrine of election may preclude the recovery of damages based upon inconsistent theories arising from the same state of facts. *See Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 850 (Tex. 1980). "[A]n election will bar recovery when the inconsistency in the assertion of a remedy, right, or state of facts is so unconscionable, dishonest, contrary to fair dealing, or so stultifies the legal process or trifles with justice or the courts as to be manifestly unjust." *Id.* at 851. As this Circuit has recognized,

[A] claimant should not be permitted to assert formally the existence of one state of facts in a claim against one party and accept complete or partial satisfaction of that claim, and then maintain an action against another party on the ground that the facts first asserted did not exist.

*Lubbock Feed Lots, Inc. v. Iowa Beef Processors*, 630 F.2d 250, 274 (5th Cir. 1980), *quoting Ward v. Shriro Corp.*, 561 S.W.2d 589, 591–92 (Tex.Civ.App.—Dallas), *rev'd on other grounds*, 570 S.W.2d 395 (Tex. 1978). Trinity argues that James' claims, herein, were asserted against former parties to the lawsuit from whom James obtained a substantial sum in settlement, and, therefore,

---

1. This is our estimate of the prejudgment interest awarded by the district court. Although the district court indicated in its supplemental conclusions of law that James was entitled to interest, at six percent per annum, on $453,-000.00 from November 15, 1973, to April 6, 1976, approximately two and one-half years, the final judgment apparently awarded James in excess of six percent compounded interest for a three year period. Judgment, in the total amount of $252,016.08, was entered on February 27, 1980. The record clearly reveals that $165,305.08 of this judgment was allocated to liquidated damages, overhead expenses,, and premiums paid for early delivery of the steel girders. The difference of $86,711.00 presumably represented the district court's award of prejudgment interest. Our computation of six percent compounded prejudgment interest on the $453,000.00, however, yields a different figure:

| | | |
|---|---|---|
| $453,000 at 6% for year 1 | = | $27,180.00 |
| $480,180 at 6% for year 2 | = | 28,810.80 |
| $508,990.80 at 6% for 143 days | = | 11,958.69 |
| Total | = | $67,949.49 |

James may not maintain this action against Trinity.

■■■ Trinity's reliance on the doctrine of election is inappropriate. Election of remedies is an affirmative defense that must be pleaded. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, supra,* 630 F.2d at 274 n.34; *Bradley v. Straus-Frank Co.,* 414 S.W.2d 504, 510 (Tex.Civ.App.—Dallas 1967, ref'd n.r.e.). Trinity not only failed to plead this defense, but also failed to litigate this issue in the trial court. Consequently, because Trinity did not demand an election, it waived the benefit of the doctrine. *See Thate v. Texas & Pacific Railway Co.,* 595 S.W.2d 591, 599–600 (Tex.Civ.App.—Dallas 1980, no writ).

■■■ Moreover, assuming the election defense was raised at trial, the allegedly inconsistent position taken by James does not require an election under these circumstances. A party may plead alternative and inconsistent facts or remedies against several parties without being barred. *See* Fed.R. Civ.P. 8(e)(2), 20(a); Tex.R.Civ.P. 48, 51. Such a pleading will not amount to an election "unless the choice is made with a full and clear understanding of the problem, facts, and remedies essential to the exercise of an intelligent choice." *Bocanegra v. Aetna Life Ins. Co., supra,* 605 S.W.2d at 852. The record indicates that James was unable to make an informed choice of defendants when the suit was initiated because Trinity had charged the consulting engineers with arbitrarily rejecting the steel girders. It was only upon extensive subsequent discovery that Trinity was found to have violated the manufacturing specifications, and a second amended complaint was, accordingly, filed. In addition, it should be noted that, since the filing of the original pleading, James has held Trinity alternatively liable for "the full amount of James' said extra cost" due to the construction delay. Although James' settlement with DFW may have partially satisfied damages resulting from the delay, the evidence clearly supports James' argument that the settlement agreements were executed in contemplation of various other unrelated claims. The election doctrine will not bar suit when a settlement for less than the stated claim is based upon uncertain and undetermined facts. *Bocanegra v. Aetna Life Ins. Co., supra,* 605 S.W.2d at 852.

If further comment on this issue is deemed necessary, suffice it to say that the primary cases relied on by Trinity, *Lomas & Nettleton Co. v. Huckabee,* 558 S.W.2d 863 (Tex. 1977) and *Metroflight, Inc. v. Shaffer,* 581 S.W.2d 704 (Tex.Civ.App.—Dallas 1979, ref'd n.r.e.), have recently been severely criticized by the Texas Supreme Court. *See generally Bocanegra v. Aetna Life Ins. Co., supra,* 605 S.W.2d at 853–55. We believe the *Bocanegra* opinion, standing alone, supports the maintenance of this lawsuit.

## II. Early Delivery Premium

After both parties filed supplemental briefs to the district court's findings of fact and conclusions of law, the judge entered supplementary findings of fact and conclusions of law, which read in pertinent part:

> The amount of $17,192.65 was a premium paid by James to Trinity for early delivery in which amount James was damaged when proper early delivery was not provided by Trinity.
>
> \*  \*  \*  \*  \*  \*
>
> James is entitled to recover $17,192.65 from Trinity for the premium paid for early delivery.

Trinity alleges error in these additional findings because the unaccepted alternative offers, from which the one-half cent per pound premium was derived, and upon which the ultimate $17,192.65 recovery was based, were not terms of the contract between James and Trinity. Therefore, Trinity argues, this "time/price differential" was not a proper measure of damages for breach of contract.

■■■ Contrary to Trinity's assertions, the time/price differential was a proper element of damages. By Trinity's own admissions, steel delivered at an earlier specified date was worth one-half cent per pound more than steel delivered on a later date. James paid the higher price with the expectation of receiving prompt delivery of the

**531**

girders. The premium was paid for an obligation that Trinity failed to perform, and it was within the trial court's discretion to compensate James therefor. Furthermore, this element of recovery was not included in other damage awards resulting from the delay. Recoverable expenditures such as liquidated damages, overhead expenses, and prejudgment interest have no relation to the price paid for the steel. James should not be penalized for the extra cost paid to Trinity to insure timely performance of the DFW contract. Accordingly, we believe the "time/price differential" was an appropriate item of consideration in determining the amount of damages suffered by James.

### III. Liquidated Damages

Trinity challenges the district court's finding that $102,162.43, retained by DFW in its settlement with James, constituted liquidated damages. Trinity contends that $52,728.04 of this sum was actually retained by DFW as damages for inadequate sandblasting of the bridges by James; therefore, because Trinity is not liable for any amount of damages resulting from James' breach of contract, the district court should have allowed only $49,434.39 as liquidated damages withheld by DFW on account of the delay.

The burden is on James to prove the amount of liquidated damages it paid to DFW.[2] Cf. *Maizel v. Bush*, 337 S.W.2d 337, 341 (Tex.Civ.App.—Dallas 1960, ref'd n.r.e.) (burden is on plaintiff to furnish sufficient evidence by which to properly measure damages). We believe the evidence amply supports the conclusion that the entire $102,162.43 was permanently withheld from James, by DFW, as liquidated damages. A pertinent paragraph of the settlement agreement stated:

From the $497,162.43 retainage presently held by the Board against Contract C–048–71, Board will permanently deduct and retain the amount of $102,162.43, representing Board's damages. The remaining $395,000.00 will be paid by Board

to James as full and final payment of all claims under Contract C–048–71, and in settlement of the following claims between the Parties thereunder, to-wit:

> Retainage
> Sandblasting Assessment
> Extra Sandblasting
> Electrical Assessment
> Finishing Machine
> Placing Conveyor
> Anti-Rotation Device
> Outside Engineering
> Deck Forming
> Transfer Conveyor

The language of this paragraph specifically provides for the satisfaction of the sandblasting claim, as well as all other pending claims, out of the $395,000.00 final payment to James. Whether these claims were meritorious, and whether they were paid in full or were compromised settlements, is immaterial to the resolution of this issue. It is clear that the parties intended the $102,-162.43 retainage to represent liquidated damages for the construction delay. Consequently, the district court findings to that effect were warranted.

### IV. Admission of Evidence

In connection with the award of liquidated damages, James has cross-appealed, alleging error in the trial court's consideration of matters surrounding the settlement agreement between DFW and James, as a result of which it is contended that the amount of liquidated damages was improperly reduced. Although information concerning settlement agreements should be kept from the jury, *see, e. g., City of Houston v. Sam P. Wallace and Co.*, 585 S.W.2d 669, 672 (Tex. 1979); *General Motors Corp. v. Simmons*, 558 S.W.2d 855, 857 (Tex. 1977), rigid rules on the admission of evidence are ordinarily not enforced in a trial before the court. Admissibility is a matter resting in the sound discretion of the judge, and, on appeal, it is presumed that the trial

---

2. Payment does not necessarily require the physical transfer of funds. Any funds withheld by DFW in excess of the contractual retainage constitutes payment.

court disregarded evidence which might have been improperly received. *See, e. g., Fishing Fleet, Inc. v. Trident Ins. Co., Ltd.,* 598 F.2d 925, 929 (5th Cir. 1979); *Gray v. Bird,* 380 S.W.2d 908, 914 (Tex.Civ.App.—Tyler 1964, ref'd n.r.e.).

█ In the instant case, the district court expressed misgivings about hearing objectionable testimony, but admitted this evidence because the trial was before the court, and any improper evidence could be excluded. Under the circumstances, we do not believe this was an abuse of discretion. Furthermore, we believe the $102,162.43 sum, which the district court awarded as liquidated damages, is fully supported by the record.

### V. Prejudgment Interest

The district court also awarded James six percent annual interest on the $453,000.00 in liquidated damages originally withheld by DFW on November 15, 1973, and continually withheld until the settlement agreement of April 6, 1976.

█ An acceptance of payment on a principal indebtedness extinguishes the claim for prejudgment interest on such indebtedness. *See Stewart v. Barnes,* 153 U.S. 456, 462, 14 S.Ct. 849, 851, 38 L.Ed. 781 (1894). The claim for interest is extinguished because

> the interest is recoverable only as damages for nonpayment of the principal when it is due, the receipt of the principal, as such, in full, is a bar to any claim for interest, because it is considered no part of the debt, but as a mere incident of the debt; and it is immaterial whether the debt be past due or running to maturity.

*United Brothers of Friendship v. Kennedy,* 193 S.W. 253, 253 (Tex.Civ.App.—Texarkana 1917, no writ). Accordingly, because acceptance of the principal in settlement, without claiming interest, is a waiver of

interest allowable as damages, James is precluded from recovering interest on the principal indebtedness of $453,000.00, which was effectively "paid" by DFW upon settlement. However, the court will allow James to recover the awarded six percent prejudgment interest on the fixed $102,162.43 liquidated damage sum which was not satisfied by the settlement between DFW and James. Based upon our figures, this amounts to approximately $15,324.25.[3]

### VI. Home Office Overhead

Trinity's last point of error, and an item of recovery upon which James has cross-appealed, concerns home office overhead expenses. The district court, finding that "James is entitled to recover that portion of its home office overhead expense which is reasonably allocable to the taxiway bridge project for the additional time it took James to complete the project because of the delay in receiving girders which met specifications," permitted James to recover $34,450.00 in damages for excess overhead home office expenses due to the construction delay. Trinity contends that there is no evidence of "additional" home office overhead costs incurred by James. James, nevertheless, contends that the Trinity contract should bear its proportionate share of normally incurred overhead expenses, computed on the additional time required to complete performance under the contract. Consequently, James has cross-appealed for an additional $21,450.00 in overhead damages.

█ When a breach of a construction contract prevents completion of the contract within the time contemplated, the defaulting party is liable for the expenses incurred as a result of the breach, including general overhead. *See Martin v. Davis Constructors, Inc.,* 552 S.W.2d 873, 878–79 (Tex.Civ.App.—San Antonio 1977, ref'd n.r. e.); *Anderson Development Corp. v. Coastal States Crude Gathering Co.,* 543 S.W.2d 402, 405–406 (Tex.Civ.App.—Houston [14 Dist.]

---

**3.** The six percent compounded prejudgment interest on $102,162.43 from November 15, 1973 to April 6, 1976, is computed as follows:

| | | |
|---|---|---|
| $102,162.43 at 6% for year 1 | = | $ 6,129.75 |
| $108,292.17 at 6% for year 2 | = | 6,497.53 |
| $114,789.70 at 6% for 143 days | = | 2,696.97 |
| Total | = | $15,324.25 |

1976, ref'd n.r.e.). To recover, however, there must be proof of "added" overhead costs proximately resulting from the construction delays. *See Sheet Metal Workers International Association, Local Union No. 223 v. Atlas Sheet Metal Co.*, 384 F.2d 101, 110 (5th Cir. 1967). "Added" costs must be in excess of normally incurred fixed expense items, *see Kansas City Bridge Co. v. Kansas City Structural Steel Co.*, 317 S.W.2d 370, 376–77 (Mo. 1958), and such costs must be attributable to a delay that inhibits performance of other available construction projects. *See W. G. Cornell Co., Etc. v. Ceramic Coating Co.*, 626 F.2d 990, 994 (D.C.Cir. 1980), *citing Kansas City Bridge Co. v. Kansas City Structural Steel Co., supra.* In other words, allocable main office overhead must represent "not only an expense, but a loss and [it must be shown] that other jobs would have been obtained to absorb such overhead." *General Ins. Co. of America v. Hercules Construction Co.*, 385 F.2d 13, 23 (8th Cir. 1967).

James has made no showing of "added" home office overhead costs incurred. In fact, the testimony at trial conclusively negates such damages. The President of James testified that home office costs were fixed, and would have been constantly incurred regardless of delay. In addition, the deposition of James' DFW job superintendent, admitted at trial, indicated that no construction equipment was idle, despite the delay. The evidence further tended to show that Trinity's breach had no impact on James' possibility of obtaining other work. Although James' president "supposed" other construction contracts were available, he was unable to identify a single bid James refrained from submitting because of its "continuing obligation" to the DFW project.

Consequently, we are of the opinion that James failed to adduce any evidence that the construction delay caused by Trinity's breach of contract prevented James "from obtaining other jobs to absorb the unallocated overhead." *Cf. W. G. Cornell Co., Etc. v. Ceramic Coating Co., supra*, 626 F.2d at 994. "[L]ack of evidence as to the fact of damages will defeat recovery." *Davis v. Small Business Investment Co. of Houston*, 535 S.W.2d 740, 743 (Tex.Civ.App.—Texarkana 1976, ref'd n.r.e.); *see Southwest Battery Corp. v. Owen*, 131 Tex. 423, 427–28, 115 S.W.2d 1097, 1099 (1938). In the absence of testimony establishing the fact of damages, we must conclude that the district court clearly erred in allowing damages for home office overhead expenses. We, accordingly, overrule this item of recovery.

VII. Field Office Overhead

In connection with overhead expenses, James seeks to recover, in a cross-appeal, an additional $30,192.22 in field office overhead expenses incurred because of the construction delay. The district court awarded $11,500.00, or 19 percent of the total $60,384.44 claimed by James, because James was performing work on several construction contracts at DFW to which the total job-site overhead could be allocated. Additional job-site construction costs, including overhead, may be proportionately granted when delay constitutes a breach of contract. *See General Ins. Co. of America v. Hercules Construction Co., supra*, 385 F.2d at 22–23; *Natkin & Co. v. George A. Fuller Co.*, 347 F.Supp. 17, 35 (W.D.Mo. 1972). We believe the district court's proportionate award of field office overhead in the instant case is reasonable, and is amply supported by the record.

VIII. Welding Costs

James' final point of error on cross-appeal concerns its claim for increased welding costs, in the amount of $30,880.08, incurred for incorporating the defective girders manufactured by Trinity into the blast protection for the bridges. The district court found:

52. ... that in July, 1973, Trinity and James discussed the nature and amount of James' charges for additional blast protection welding, that they agreed that the charges set forth in James' invoice number 76 represented all additional charges for blast protection welding, and Trinity agreed to pay such charges. In January, 1974, these charges were paid by

James deducting the amount thereof from its final payment to Trinity. At that time James intended that all cost for additional welding be settled by James deducting the charges from the final payment.

53. James' claim for alleged additional expense incurred in welding the blast protection is barred by the defense of accord and satisfaction.

"[T]o apply the rule of accord and satisfaction...it must appear that there is a bona fide dispute existing between parties as to the amount owing by the debtor." *Hines v. Massachusetts Mutual Life Ins. Co.*, 174 S.W.2d 94, 97 (Tex.Civ.App.—Fort Worth 1943, no writ). The record reveals that Trinity took exception to several charges for blast protection welding, and other extra expenses, James claimed it incurred as a result of utilizing the rejected girders. These contested items were periodically discussed, and were apparently settled upon James' final payment to Trinity. Therefore, we cannot say that the district court's finding of accord and satisfaction was clearly erroneous.

### IX. Conclusion

For the foregoing reasons, we modify the district court's award of prejudgment interest on the $453,000.00 liquidated damages claim, by reducing such interest to $15,324.25, and set aside the $34,450.00 recovery for home office overhead. The judgment of the district court is affirmed in all other respects. Accordingly, James is entitled to recover from Trinity damages in the total amount of $146,179.33, as follows:

| | |
|---|---:|
| Liquidated damages | $102,162.43 |
| Field Office Overhead | 11,500.00 |
| Early delivery premium | 17,192.65 |
| Prejudgment interest | 15,324.25 |
| | $146,179.33 |

AFFIRMED IN PART, REVERSED AND RENDERED IN PART.