**HAWTHORNE INDUSTRIES, INC.,**
**Plaintiff-Appellant,**

v.

**BALFOUR MACLAINE INTERNATIONAL, LTD., Defendant-Appellee.**

No. 81–7202.

United States Court of Appeals,
Eleventh Circuit.

May 28, 1982.

Mitchell, Mitchell, Coppedge, Boyett & Wester, Warren N. Coppedge, Jr., J. Raymond Bates, Jr., Dalton, Ga., for plaintiff-appellant.

McCamy, Minor, Phillips & Tuggle, C. Lee Daniel, III, Dalton, Ga., for Stevens Textile.

Heyman & Sizemore, William B. Brown, Patrick L. Swindall, William H. Major, Atlanta, Ga., for Balfour.

Before INGRAHAM *, HATCHETT and ANDERSON, Circuit Judges.

INGRAHAM, Circuit Judge:

This suit [1] arises out of a series of contracts between appellant Hawthorne Indus-

---

* Honorable Joe Ingraham, U. S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332 (1976).

We note also that the contracts underlying this dispute contain choice of law provisions invoking the law of New York. Although cases from both New York and Georgia were cited to the district court at an early point in the pro-

tries, Inc. (Hawthorne), a carpet manufacturer, and appellee Balfour Maclaine International, Ltd. (Balfour), under which Balfour agreed to supply jute for use as carpet backing. The district court found that the jute supplied by Balfour was defective and that Balfour thereby breached its contracts with Hawthorne. These findings are not contested. Hawthorne appeals the district court's denial of its request for consequential damages representing loss of efficiency, excess down time, and additional adhesive materials expended in attempting to utilize the defective jute. We remand for more specific findings concerning the adequacy of Hawthorne's proof of damages.

The parties entered into three contracts, two in August 1975, and one in February 1976, calling for purchases of approximately 248,000 yards of jute. As described at trial, jute carpet backing is an imperfect commodity in which some deviation in quality and dimension is normally expected. As the district court found, however, the parties evidently intended that all the jute purchased under these contracts would conform to the standards and tolerances of the Jute Carpet Backing Council. Although Hawthorne was able to process approximately 80,000 yards of Balfour's jute, with a contract value of approximately $48,000, Hawthorne encountered substantial deviations in the quality of the jute that made production exceedingly difficult. In order to avoid wrinkles, sagging and other undesirable effects, Hawthorne claims it slowed down its machinery to facilitate adjustments by hand and added extra latex adhesive between the jute and the primary carpet surface.

Because of the defects encountered, Hawthorne eventually rejected the balance of the jute supplied by Balfour, withheld the purchase price and brought suit alleging breach of contract in a Georgia state court against Balfour and a Georgia corporation that acted as sales agent. Hawthorne's complaint sought consequential damages of $50,000. Balfour counterclaimed for the purchase price of jute consumed, and consequential damages. The Georgia corporation was dismissed and the case removed to the United States District Court for the Northern District of Georgia.

Hawthorne's evidence of damages may be briefly summarized as follows. Three of Hawthorne's plant supervisors testified that the normal speed of the jute processing in 1975 or 1976 was approximately twenty feet per minute, but that the machinery was slowed approximately three feet per minute to process the Balfour jute. These witnesses also testified that approximately two to four extra ounces of latex adhesive were applied per yard, and that the plant experienced approximately 30% down time while Balfour's jute was in use. Based on the estimates of these witnesses, together with the weekly production reports, Hawthorne's chief financial officer prepared a cost estimate for the value of lost efficiency, additional machine time and materials expended. On cross-examination Balfour established that no written records of the rate of production or additional materials were kept. Balfour's contention, therefore, both at trial and on this appeal, has been that Hawthorne's damage claim is based on guess work and speculation. Interestingly, one of Balfour's witnesses, Dennis Brock, a former financial officer of several other carpet plants in the area, substantially confirmed Hawthorne's estimates of a reasonable reduction in speed of production and increased use of adhesives when jute problems are encountered.

The district court found that the jute varied in quality from one roll to another, as well as within a roll. Thus, the defects did not render all of the jute unusable, but did require Hawthorne to slow down the manufacturing process and make adjustments to attempt to overcome the variations in quality. As the district court described, Hawthorne's machinery was set at the "lowest common denominator" in order

ceedings, the briefs on appeal contain only Georgia and federal authorities. We therefore assume that Georgia law has been selected by mutual, if tacit, consent, and we see no reason to disturb this choice. *See Garwood v. International Paper Co.*, 666 F.2d 217, 221 n.6 (5th Cir. 1982).

to accommodate the full range of variations. The court found that all of Hawthorne's adjustments were commercially reasonable in the carpet manufacturing industry. The court further found that Hawthorne "sustained a loss of machine efficiency in processing the Balfour jute," that slowing the machinery caused "additional cost" and "great trouble and expense," and that "Hawthorne sustained increased costs by virtue of adding extra adhesives to laminate Balfour jute to the primary carpet backing."

Notwithstanding these findings, the district court declined to award damages for loss of efficiency, slow-down or extra adhesives. In finding of fact 45, the district court stated: "Damages claimed by plaintiff are too speculative and uncertain to allow a recovery for cost of excess run time, loss of efficiency and cost of excess down time." The findings were subsequently amended to add finding 46, an identical finding with respect to extra latex adhesives. In conclusion of law 7, the court stated:

> The plaintiff's method of proving consequential damages failed to account adequately for the wide deviation in the rate of production with various types of jute. Thus, although the plaintiff has established that the jute was of inferior quality and constituted a "material breach" or "substantial nonconformity", it has failed to prove its damages with a sufficient degree of certainty.

The court then awarded Balfour the contract price for jute consumed by Hawthorne, offset by the freight expenses incurred by Hawthorne in returning the defective jute to Balfour.

There are two troubling aspects of the district court's damages analysis that will require a remand for further clarification. As to conclusion of law 7, it is unclear what method of proving damages would account adequately for the deviation in the rates of production for jute when the court had previously found, at least with respect to Balfour's jute, that Hawthorne had been forced to set all of its machinery at a "lowest common denominator" production rate. In other words, Hawthorne's theory of consequential damages in this respect is that the defects caused a demonstrable, consistent slow down from the standard twenty feet per minute to approximately seventeen feet per minute. If, however, conclusion of law 7 refers to a failure of proof as to either Hawthorne's standard rate of production or the actual rate of production with Balfour's defective jute, then this conclusion should be clarified in light of our next, and more general, concern.

The district court's findings plainly indicate that some consequential damages were caused by Balfour's breach. Increased production costs are unquestionably proper items of recovery as consequential damages when adequately attributed to a breach. *See, e.g., Guy James Construction Co. v. Trinity Industries,* 644 F.2d 525 (5th Cir. 1981) (Georgia law), *modified* 650 F.2d 93 (5th Cir. 1981); *Bennett v. Smith,* 245 Ga. 725, 267 S.E.2d 19 (1980); *Buck Creek Industries, Inc. v. Williams-East, Inc.,* 130 Ga. App. 813, 204 S.E.2d 787 (1974); *Southern Concrete Products Co. v. Martin,* 126 Ga. App. 534, 191 S.E.2d 314 (1972). Before and after enactment of the Uniform Commercial Code in Georgia, the rule preventing recovery of "speculative" damages referred "more especially to the uncertainty as to the cause, rather than uncertainty as to the measure or extent of damages." *B & D Carpet Finishing Co. v. Gunny Corp.,* 158 Ga.App. 621, 281 S.E.2d 354 (1981), *citing Booker v. J. T. Bickers Realty Co.,* 127 Ga.App. 614, 194 S.E.2d 490 (1972). There is no speculation in this case as to the causation of damages. With respect to certainty as to measure or extent of damages, Comment 4 to UCC § 2–715, Ga.Code Ann. § 109A–2–715, states the applicable rule as follows:

> The burden of proving the extent of loss incurred by way of consequential damage is on the buyer, but the section on liberal administration of remedies rejects any doctrine of certainty which requires almost mathematical precision in the proof of loss. *Loss may be determined in any manner which is reasonable under the circumstances.*

(Emphasis added). *See generally Sam Finley, Inc. v. Barnes,* 147 Ga.App. 432, 249

S.E.2d 147 (1978) (Georgia law requires "reasonable certainty"); *Farmers Mutual Exchange of Baxley, Inc. v. Dixon*, 146 Ga. App. 663, 247 S.E.2d 124 (1978); *Crankshaw v. Stanley Homes, Inc.*, 131 Ga.App. 840, 207 S.E.2d 241 (1974).

■■ Balfour is entirely correct that the "question of damages cannot be left to speculation, conjecture and guesswork." *Hayes v. Flaum*, 138 Ga.App. 787, 227 S.E.2d 512, 513 (1976) (cites omitted). The Georgia authorities cited above, however, clearly indicate that compensation for undisputed injury should not be denied merely because the amount of damages cannot be precisely and exactly determined.

■ The district court may very well have believed that the proof of damages was insufficient because the estimates of company witnesses were mere conjecture. *See Bassett Furniture Industries v. NVF Co.*, 576 F.2d 1084, 1089 (5th Cir. 1978), *corrected*, 583 F.2d 778 (5th Cir. 1978); *Wojcik Construction Co. v. Schell's Concrete Co.*, 156 Ga.App. 414, 274 S.E.2d 601 (1980). Unfortunately, we cannot tell from the record as it stands whether·this was, in fact, the basis of the district court's opinion. On remand, if the district court feels the proof of extent of damages is lacking, it should enter a finding to that effect. However, if the court determines upon reexamination of the record and its findings that an award of consequential damages can be ascertained with reasonable certainty, the court shall enter such an award.

Accordingly, the order of the district court is affirmed in part; findings of fact 45 and 46 and conclusion of law 7 are vacated; and the cause is remanded for further findings on the record.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.