David E. **FOURNIGAULT**, Josephine H. Merlo, Armando Medina, Rosa Medina, Wanda G. Freeman, Deborah E. Miller, Mark F. Kleemeier, Deanna J. Kleemeier, Richard W. Baier, and Diane L. Baier, individually and on behalf of all persons similarly situated, Plaintiffs,

v.

**INDEPENDENCE ONE MORTGAGE CORPORATION, Defendant.**

No. 94 C 1742.

United States District Court,
N.D. Illinois,
Eastern Division.

May 15, 2007.

---

Charles S. Zimmerman, Barry G. Reed, Hart L. Robinovitch, Zemmerman Reed P.L.L.P., Minneapolis, MN, M. Scott Barrett, Dennis Tighe Trainor, Barrett & Associates, Chicago, IL, for Plaintiffs.

David E. Fournigault, pro se.

Robert Jerald Emanuel, Andrew D. James, Cynthia M. Storer, Danielle J. Szukala, Leann Pedersen Pope, Marjorie Golis Wilde, Burke, Warren, Mackay & Serritella, P.C., Chicago, IL, Michael T. Tomaino, Sullivan & Cromwell, New York, NY, for Defendant.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

This is the last surviving member of a large group of MDL cases alleging that various mortgage corporations put too much of Plaintiffs' money into escrow for taxes. The named plaintiffs now seek Summary Judgment on a contract count.

Plaintiffs claim that Defendant routinely demanded, and collected, monthly escrow payments in excess of the maximum allowed by its form mortgage contracts, and the amounts also exceeded the maximum allowed by the federal Real Estate Settlement Procedures Act ("RESPA"). They seek damages in the form of lost interest, or float, on the excess funds.[1] Plaintiffs do not allege that the excess funds were diverted from their proper purpose, however. At the time the complaint was filed in the transferor court, IOMC serviced over 150,000 mortgages. In 1994, it sold its assets (including servicing rights for 120,000 loans) to Norwest and got out of the mortgage servicing business. The case started out as a nationwide class action, but appellate clarification of the law destroyed the viability of such class actions in cases like these. So Plaintiffs sought and gained class certification on narrower grounds, first for a New York class[2] and then for six other statewide classes: Illinois, Florida, Michigan, Ohio, South Carolina and Texas. I granted certification last year.

The measure of liability and damages in these cases may be quite simple. Defendant collects a certain amount in escrow, pays the tax and has some funds left over. Absent a contract which allows some extra funds to remain in the account—a cushion—both the breach of contract and the measure of damages have been established. Even where there is a cushion, its limits can be calculated and any excess amount is the measure of damages.[3]

I have had many occasions to analyze rules of mortgage escrow accounting. The theories of the plaintiffs and defendants in those cases have evolved over time, and I decline to recite the saga. The legal issues do not make for compelling reading, and those who care about the results are very few in number. The bottom line is that old conventional mortgage forms did not allow a cushion; old government forms allowed a one-month cush-

---

1. The other MDL cases have invariably proceeded on the premise that the float on whatever excess funds were in escrow was the measure of damages. The Superior Court of California in and for the County of San Diego has accepted that this applies to contract claims. *See Kramer v. Independence One Mortgage Corporation,* No. GIC–863162 (Feb. 20 2007).

2. The transferor court was the Western District of New York.

3. All but one of the class representatives had zero cushion contracts and the account balance for each of them after taxes were paid ranged from highs of $3,829 (Florida) and $850 (Texas) to lows of $82 (Ohio) and $197 (Michigan).

ion, and newer RESPA forms allow a two-month cushion. Under the conventional forms at issue here, the servicer may only collect exactly one-twelfth of the estimated annual escrow disbursement each month. The Ohio class representative, who had a government contract, could be required to pay more—amounting to thirteen-twelfths over a single year.

All cushions are defined in terms of monthly cushions. At one point, there was some serious public attention paid to over-escrow payments. After the controversy was settled, RESPA allowed a two-month cushion, and servicers just re-wrote their contracts to provide for the maximum cushion allowed by RESPA. For now, that means the mortgagee can be required to pay fourteen-twelfths of estimated escrow disbursements. At issue here are mortgages under the earlier or "old" contracts.

In other cases, I have held that no cushion means that, at least once a year, the escrow should contain zero dollars. For example, this could happen immediately after taxes are paid. I have recognized that this will present practical problems. Sometimes expenses to be paid out of escrow may be higher than estimated, and the servicer may have to spend time and money to pursue the mortgagee to make up the deficiencies. However, these contracts were the ones the mortgager insisted that the homeowner sign. The same principle applies to cases where cushions are allowed. Once a year, the account balance must be no larger than the allowable cushion.[4] As Plaintiff correctly states, the rule is that, whatever the accounting method, "the *outcome* must be a reserve no greater than that called for in the contract."

The damage claimed is the interest lost on the money held in escrow. Most states do not require interest to be paid on escrow accounts and, with the exception of New York (at 2%), that is true of the states here. There is no statutory interest rate, but the Court of Appeals has said that violations of federal law (here RESPA) should carry pre-judgment interest at the prime rate, which may be compounded. *Gorenstein Enters., Inc. v. Quality Care–U.S.A., Inc.*, 874 F.2d 431, 436–37 (7th Cir.1989). Here such damages would likely to be easy to calculate in each individual case. It would be a routine formulaic task but it would take some considerable time to do. A special master could manage such a task, similar to *Union Carbide & Carbon Corp. v. Nisley*, 300 F.2d 561, 589 (10th Cir.1961).

Defendant's first challenge to summary judgment is precisely that there is no interest due on funds that may have been needlessly escrowed but were fully refunded in the ordinary course of servicing the mortgage, according to the provisions of the contract. I have held in other cases and contexts that "the test for breach is not merely whether escrow demands create surplus, but whether the mortgagee met the requirements of good faith in calculating the payments and whether the mortgagee disposed of excessive surplus as the contract requires." *Poindexter v. Nat'l Mortgage Co.*, No. 94 C 5814, 1995 WL 242287, at *4 (N.D.Ill.1995).

Defendant reads this case to mean that a good faith calculation may be a defense under the contracts. This is true, but that defense is not applicable here. I read the contract to unambiguously mean that the balance has to zero out once a year. Good faith cannot avail a defendant from failing to meet that obligation. It is true that the escrow payments are estimated and may be in error, but the zero cushion requirement imposes an obligation to under-estimate, so that the zero amount is reached once a year. The reason that newer contracts allowed a cushion is precisely because the contracts (which Plaintiffs did not draft) put the servicers in a bind. Before the newer contracts, the servicers resorted to self-help. The absence of malice or bad faith is understandable, because they may reasonably believe

---

4. The series of my opinions are *Aitken v. Fleet Mortgage Corp.*, No. 90 C 3708, 1991 WL 152533 (N.D.Ill.1991); *Aitken v. Fleet Mortgage Corp.*, No. 90 C 3708, 1992 WL 33926 (N.D.Ill.1992); *Markowitz v. Ryland Mortgage Co.*, 94 C 7682, 1995 WL 472757 (N.D.Ill.1995); *Mark v. Keycorp Mortgage, Inc.*, No. 95 C 4878, 1996 WL 465400 (N.D.Ill.1996); *Miller v. Chevy Chase Bank, F.S.B.*, No. 97 C 4494, 1998 WL 142394 (N.D.Ill. 1998).

that they will be out of pocket for a debt owed by someone else, but it does not make out a good faith defense. The defense's focus, on how it must estimate unknown amounts to escrow and how such estimates might be wrong, avoids the key issue— whether they had to get to zero once a year under the contracts they tendered to the borrower. Problems of estimation and provisions for credit or refund do not satisfy the clear contractual obligation to get to zero once a year. Changing the contracts ended up solving their problem. Attempting to solve it without changing the contract was wrong.

Defendant attacks the idea that unpaid interest is due. The contracts themselves do not preclude interest on funds in escrow. They simply leave the matter undecided. The contracts say that unless "applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest ...." I do not read this language as a bar against any interest. Rather, no interest is due on money held to pay escrow items (taxes, insurance, and so forth), but the money in question was not held to pay escrow items, it was in excess of the amount due for escrow items.[5]

It is inevitable that the bank will get a certain permissible float in an escrow account because, by virtue of the monthly payments, there will be substantial funds correctly accumulated to pay taxes. Even though it has the use of the mortgagees money, the bank need not pay interest. It is good for the bank and may be good the mortgagee, who may need the discipline of monthly savings to pay taxes. One might even regard the bank's float as fair compensation for this benefit to the mortgagee—a compensation for administering a forced savings plan. Many mortgagees don't pay into escrow because they find a bank which regards them as capable of paying taxes without escrow and the mortgagee wants to have the use of his or her own money.

Beyond the amount actually paid for escrow items, the clause surrendering interest to the bank has no application to funds held past the date of pay-out in excess of any allowable cushion.

Whether applicable laws, as opposed to contracts, require interest is the important question.

Both parties address the issue state by state:

1.  Illinois provides for interest under the Illinois Interest Act but that Act only covers those transactions in which the contract does not cover the issue. *Kruse v. Kuntz,* [288 Ill.App.3d 431, 225 Ill.Dec. 522,] 683 N.E.2d 1185 (Ill. App.Ct.1996). That is the case here. Illinois law may preclude recovery of interest after the debtor has accepted full payment of the principal, as the class representative has done here. *Graves v. Saline County, Illinois,* 104 F. 61 (7th Cir.1900), seems to make this point, but it is an old case tied to unusual circumstances involving interest coupons on a municipal bond. In any event, this lawsuit was filed before the loan was paid off and, under these circumstances, I do not think the class representative "accepted" full payment.

2.  Texas law provides interest based on statute or principles of equity, but also bars claims after the principal has been paid back. *See Guy James Constr. Co. v. Trinity Indus. Inc.,* 644 F.2d 525 (5th Cir.1981). Here, the class representative had been refunded the amount claimed before the suit was filed. However, I think the Texas bar only applies to conventional cases of settlement between parties to a discrete dispute, not to routine loan payoffs. The development of Texas statutes and judicial gloss cautions against reading *Guy James* too broadly.

3.  Florida law allows interest, but it often only allows it from the date of demand.

---

**5.** The contract even bars interest to lenders who collect too much (within reasonable estimates) so long as there is one point a year where the zero balance or the cushion balance is met. A mortgage servicer who makes reasonable estimates that turn out to be too high may still keep the interest on these funds through much (but not all) of the year as the excess accumulates.

*Neimark v. Abramson,* 403 So.2d 1057 (Fla.Dist.Ct.App.1981). By the time the class representative here filed suit, which Defendant interprets as a demand, the principal had been paid. Here, I think Defendant is again reading law applicable to conventional individual disputes. I do not think the Florida courts would apply the law to a routine mortgage payoff.

4. South Carolina law follows the rule enunciated for Florida, and I similarly construe it to permit interest.

5. New York law does not bar interest-only damages claims. A plaintiff can seek interest at common law if he also seeks payment of the principal. *Prudence Co. v. Fid. & Deposit Co. of Md.,* 77 F.2d 834 (2nd Cir.1935). However, statute gives the right to collect pre-judgment interest. *See* N.Y. Gen. Oblig. 5–601 and N.Y. C.P.L.R. 5001. The class representative was out of the mortgage in 1994, and the payoff occurred when Norwest acquired servicing rights. This still leaves his breach of contract claim against Defendant intact, even if he may have another against Norwest. In any event, the class representative had filed his suit prior to payoff of the loan.

6. Michigan has some precedent which bars "interest only" suits after the debt has been settled, but the cases would not be applied to the matter at issue here. Michigan policy is highly favorable to pre-judgment interest. *Gordon Sel-Way, Inc. v. Spence Bros., Inc.,* 438 Mich. 488, 475 N.W.2d 704 (1991); *SSC Associates Ltd. P'ship v. Gen. Ret. Sys. of City of Detroit,* 210 Mich.App. 449, 534 N.W.2d 160 (1995).

7. Ohio law seems to permit the interest-only damages sought here. Most of the precedent favoring Plaintiffs comes from trial courts, but I believe that *Royal Electric Constr. Corp. v. Ohio State Univ.,* 73 Ohio St.3d 110, 652 N.E.2d 687 (1995), enunciates principles that permit the damages claimed here.

I do not pretend that the law on interest-only damages is crystal clear. The cases are not legion. Many of them are quite old and most of the cases come from trial courts. I have reached my conclusions based on what I believe to be the predictable path of legal evolution within the context of the state cases and the legislative structure of the individual states.

The net effect of this is that, in my view, Plaintiffs are entitled to summary judgment.[6]

Defendant argues that, even if this is so, summary judgment is inappropriate prior to issuance of class notice and a chance for others to opt out. There is some force to this argument. So, I do not finally enter partial judgment on liability. I offer this impression opinion so that counsel may assess trial strategy and other matters.

The one remaining issue is whether Defendant should pay for class notice. Given my impression of the outcome of the liability issue, I think circumstances exist which justify the exceptional requirement of Defendant bearing the cost of notice. *See* 3 H. Newberg & A. Conte, Newberg on Class Actions § 7:2 (4th Ed.2002). So, I grant this part of the motion.

For the aforementioned reasons, the motion to strike Plaintiffs' statement of material facts is denied, the motion for summary judgment on liability is entered and continued until class notice is sent and the opt-out period expires, and the motion to have Defendant bear the costs of class notice is granted.

---

**6.** I deny Defendant's motion to strike Plaintiff's statement of material facts. There are some formal defects in the papers, but I was able to disregard inappropriate conclusions and legal arguments without much effort. Otherwise the statement is appropriate.