In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-2653

ANGEL BAKOV, *et al*.,

*Plaintiffs-Appellees*,

*v.*

CONSOLIDATED WORLD TRAVEL, INC.,

*Defendant-Appellant*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 2980 — **Harry D. Leinenweber**, *Judge*.

———————————

ARGUED FEBRUARY 10, 2022 — DECIDED MAY 19, 2023

———————————

Before WOOD, KIRSCH, and JACKSON-AKIWUMI, *Circuit
Judges*.[*]

WOOD, *Circuit Judge*. This case presents a narrow but important question about the administration of class actions:

———————————

[*] The case was originally argued before Judges Manion, Kanne, and Jackson-Akiwumi. After Judge Kanne's death and Judge Manion's retirement, it was reassigned to this panel.

what authority do district courts have to impose the cost of
class notice on a defendant that already has been found liable
to the class? The court in the case before us ruled that defend-
ant Consolidated World Travel, Inc. (CWT) had to bear those
costs. We explain below how this came about. We conclude
that in the unusual circumstances of this case, the district
court had the authority to assign these costs to CWT and that
it did not abuse its discretion in doing so. We thus affirm its
order.

## I

The class asserts in this action that CWT violated the Tele-
phone Consumer Protection Act (TCPA) by calling class mem-
bers using prerecorded voice messages, a practice the law ex-
pressly prohibits. See 47 U.S.C. § 227(b)(1)(B). Operating un-
der a fictitious name, CWT employed a company called Vir-
tual Voice Technologies Pvt. Ltd. (VVT), which is based in In-
dia, to call millions of people across the United States and of-
fer them "a free cruise simply to show you a great time." On
these calls, agents would communicate by using a sound-
board, which enabled them to choose among 47 prerecorded
prompts. For every customer who agreed to have their call
transferred from VVT to CWT and then stayed on the line for
at least 60 seconds, CWT paid VVT a $3.50 commission.

Relying on Federal Rule of Civil Procedure 23(b)(3), Plain-
tiffs initially moved to certify a nationwide class of people
who had received VVT's calls. On March 21, 2019, the district
court granted in part and denied in part the motion. It certi-
fied a class of Illinois residents, but to the extent the motion
asked for a nationwide class, the court denied it. The judge
took this step based on his belief that the Supreme Court's de-
cision in *Bristol-Myers Squibb Co. v. Superior Court of California*,

582 U.S. 255 (2017), required a finding of no personal jurisdiction over CWT for purposes of the claims of the proposed nonresident class members. With that decision in hand, Plaintiffs used two third-party service providers to identify and send notice to the 28,239 Illinois class members. Plaintiffs covered that cost.

About six months later, the parties submitted cross-motions for summary judgment. The district court granted the class's motion on the TCPA claim. The court also determined that CWT's TCPA violations were committed willfully or knowingly. That finding permitted an award of anything from actual to treble damages. See 47 U.S.C. § 227(b)(3)(C).

Shortly after the liability determination, we issued our opinion in *Mussat v. IQVIA, Inc.*, holding that "the principles announced in *Bristol-Myers* do not apply to the case of a nationwide class action filed in federal court under a federal statute." 953 F.3d 441, 443 (7th Cir. 2020). In those circumstances, "the named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so." *Id.* at 447.

*Mussat* undercut the reason behind the district court's decision to limit the class to Illinois, and so the court re-opened that question. It ultimately granted Plaintiffs' motion to amend the class-certification order; the revised order certified a nationwide class, in keeping with Plaintiffs' original request. The court then entered summary judgment in favor of the nationwide class for the same reasons it had entered summary judgment in favor of the Illinois class. At the same time, it determined that the new class members were entitled to notice and an opportunity to opt out. See Fed. R. Civ. P. 23(c)(3)(B). Following that decision, the court noted that it had

"some discretion" to shift notice costs to the defendant. It pointed to the considerations laid out in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978), and asked the parties for additional briefing on the availability and location of class members, possible methods of notifying them, the estimated cost, and who should pay that cost.

Plaintiffs proposed that the parties use the same method that they had employed to identify and send notice to the Illinois class members. They submitted documentation from third-party service providers estimating that the total cost of identifying and sending notice to the new members would be $602,838. CWT did not oppose Plaintiffs' plan, but it argued that cost-shifting was not appropriate. In CWT's view, the Supreme Court's decisions in *Oppenheimer* and *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), flatly precluded the district court from shifting costs to defendants except in situations where such costs were nominal for defendants.

The district court resolved this dispute in Plaintiffs' favor, through a minute order requiring CWT to bear the costs of providing notice to the nationwide class. It explained that it was doing so because CWT's liability already had been established through the summary judgment order. It added that it was going to wait until the final damages determination before deciding whether Plaintiffs were also entitled to reimbursement of the costs of providing notice to the Illinois class members.

Interestingly, CWT did not request that Plaintiffs be required to post a bond for the cost of notice to the nationwide class members. It did, however, file a notice of appeal from this order. It contended that the Supreme Court's decision in *Eisen* established that an order allocating the cost of class

notification to a defendant is an immediately appealable "collateral order." See *Eisen*, 417 U.S. at 171–72; *Oppenheimer*, 437 U.S. at 347 n.8. We agree with CWT that these cases support our appellate jurisdiction, and so we proceed to the question at hand.

## II

We review a district court's allocation of class identification and notice costs for an abuse of discretion. See *Oppenheimer*, 437 U.S. at 359. A decision based on an error of law represents an abuse of discretion. *Lukaszczyk v. Cook County*, 47 F.4th 587, 598 (7th Cir. 2022).

As the district court properly recognized, classes certified under Rule 23(b)(3) may not go forward until the unnamed members of the class have received notice and an opportunity to opt out. The Rule specifies that the court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Since 2018, it has also permitted "contemporary methods of giving notice," including electronic means, which in many cases can be a great cost-saver. See Committee Note, 2018 amendments. Rule 23(d) further specifies that "the court may issue orders that … require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members" and "deal with similar procedural matters." The Rules say nothing, however, about who must bear the cost of whatever notice is given.

Ordinarily, the "rule is that a plaintiff must initially bear the cost of notice to the class," *Eisen*, 417 U.S. at 178, because "it is he who seeks to maintain the suit as a class action and to

represent other members of his class." *Oppenheimer*, 437 U.S. at 356. Usually "there is no warrant for shifting the cost … to the defendant" at the outset of the case. *Id.* Indeed, the Supreme Court has "caution[ed] that courts must not stray too far" from this basic principle. *Id.* at 359.

These statements carry with them two related implications. First, the general rule that a plaintiff must *initially* bear the cost of notice implies that the cost may later be shifted. Second, though we take seriously the Court's warning not to stray too far from the usual rule, it does not purport to be all-encompassing.

In *Oppenheimer*, the Court explained that it is within a district court's discretion to order a defendant in a class action to perform a necessary task related to notice when "the defendant may be able to perform [the] task with less difficulty or expense than could the representative plaintiff." 437 U.S. at 356. The Court then addressed the question of who should bear the expense incurred in performing that task. *Id.* at 358. Generally, "the test should be whether the expense is substantial," in which case it should be borne by the representative plaintiff. *Id.* at 359. But if "the task ordered is one that the defendant must perform in any event in the ordinary course of its business," then "it may be appropriate to leave the cost where it falls." *Id.*

Additionally, the Court cautioned that it is inappropriate for a district court to place notice costs on a defendant just because the defendant prevailed on an argument that made notice and its attendant costs necessary. *Id.* at 360. That is "neither fair nor good policy." *Id.* But we should not take that principle too far. Contrary to CWT's contention, *Oppenheimer* does not say that a defendant's victory on any argument,

central or trivial, precludes the district court from shifting costs to the defendant. *Oppenheimer* noted only that it would be unfair to shift costs to the defendant based solely on "[a] bare allegation of wrongdoing," such as what one might find in an initial complaint. *Id.* at 363. Nowhere, however, did the Court rule out cost-shifting as a matter of law.

The *Oppenheimer* opinion therefore left room for district courts to tailor the allocation of costs to the specifics of a case. The Court said as much, noting that it was "not attempt[ing] to catalogue the instances in which a district court might be justified in placing the expense on the defendant … ." *Id.* at 359. Moreover, nothing in the opinion called for district courts mechanically to address each "factor" the Court had mentioned in *Oppenheimer* itself. Each case must be assessed on its own.

The general rule outlined by *Oppenheimer* is most likely to apply when liability has yet to be determined. Normally, the class certification decision and the attendant notice to the class come before any decision on the defendant's liability. See Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."). At that point, a class action consists mainly of allegations, and so notice costs appropriately should fall on the representative plaintiff because "it is he who seeks to maintain the suit as a class action and to represent other members of his class." *Oppenheimer*, 437 U.S. at 356. It makes sense that a defendant should be responsible for the cost of a necessary task at that stage only if the cost is insubstantial or if the defendant will perform the task anyway. A contrary rule would allow class plaintiffs to saddle potentially innocent

defendants with the considerable costs required to fund litigation against themselves.

But not all cases fit that mold—this one, for instance. The district court made its liability determination *after* it had a certified class of Illinois residents, but *before* class certification and the necessary notice had been given to the non-Illinois group. This order of events is unusual because Rule 23(c)(1)(A)'s requirement of certification "at an early practicable time," coupled with the rule against one-way intervention, typically prohibit a plaintiff from obtaining a favorable judgment on her individual claim and then seeking to multiply her good fortune by belatedly certifying a class. See, *e.g.*, *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1057 (7th Cir. 2016) (explaining the rule against one-way intervention); *Amati v. City of Woodstock*, 176 F.3d 952, 957 (7th Cir. 1999) ("The rule bars potential class members from waiting on the sidelines to see how the lawsuit turns out."). On rare occasion, however, the quirks of litigation result in situations where class certification decisions are justifiably postponed or revisited after liability has been determined. See *Collins v. Village of Palatine*, 875 F.3d 839, 845 (7th Cir. 2017) (explaining that the term "practicable" in Rule 23(c)(1)(A) "allows for wiggle room"); Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

In these situations, courts have relied on a finding of liability to shift notice costs to a defendant. This was the case, for example, in *Hunt v. Imperial Merchant Services., Inc.*, 560 F.3d 1137 (9th Cir. 2009). *Hunt* was a debt collection case in which the district court certified a plaintiff class, granted partial summary judgment for the class, and then ordered the defendant, IMS, to pay the costs of notifying the class members.

IMS appealed, conceding "that it must pay the class notice costs if it lo[st] the merits appeal." *Id.* at 1141. Against that backdrop, the court had this to say:

> So far as we are aware, no appellate court has addressed in a published opinion whether a district court's determination that a class action defendant is liable on the merits entitles the district court to shift notice costs to that defendant. This absence of authority is not surprising. … [T]he losing party in a class action typically is responsible for class notice costs … .

*Id.* at 1142. By way of illustration, the *Hunt* opinion cited several district court cases in which "courts have placed notice costs on the class action defendant once the defendant's liability has been established." *Id.* at 1143; see also *Fournigault v. Indep. One Mortg. Corp.*, 242 F.R.D. 486, 490 (N.D. Ill. 2007) (finding that, because plaintiffs were entitled to summary judgment on the merits, "circumstances exist which justify the exceptional requirement of Defendant bearing the cost of notice"); *Bickel v. Whitley Cnty. Sheriff*, No. 8-CV-102, 2010 WL 5564634, at *3 (N.D. Ind. Dec. 27, 2010) ("[B]ecause Defendant's liability has been established on the merits, … Plaintiff's request to shift the costs of class action notice to Defendant may be GRANTED."); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 n.18 (1st Cir. 2015) (citing *Hunt* approvingly and acknowledging that fee-shifting after a liability determination is discretionary).

The rule announced in *Hunt* has been recognized by respected treatises. See 3 William B. Rubenstein, *Newberg on Class Actions* § 8:33, Westlaw (database updated Dec. 2022) ("[L]ower courts have identified four situations in which the defendant may appropriately bear the costs of notice,"

including "when there has been some preliminary finding of the defendant's liability."); 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 5.84, Westlaw (database updated Nov. 2022) ("If the court has entered an order by summary judgment or otherwise that the defendant is liable on the merits before notice is sent, however, some courts have exercised their discretion to shift the cost of providing notice to the defendants."); 6A Stacy L. Davis *et al.*, *Federal Procedure, Lawyer's Edition* § 12:326, Westlaw (database updated Mar. 2023) ("A district court in an appropriate case may award interim costs to a plaintiff by shifting class notice costs to the defendant even if the defendant might later be entitled to recover those costs.").

This does not mean that costs must be shifted when liability has been found; the ultimate decision rests in the district court's discretion. See *Hossfeld v. Lifewatch, Inc.*, No. 13 C 9305, 2021 WL 1422779, at *4–5 (N.D. Ill. Mar. 4, 2021); *Hackler v. Tolteca Enters., Inc.*, No. 18-cv-911, 2020 WL 10324562, at *3 (W.D. Tex. May 28, 2020); *Barfield v. Sho-Me Power Elec. Coop.*, No. 11-cv-4321, 2014 WL 1955107, at *8 (W.D. Mo. May 14, 2014); *Beeson v. Med-1 Sols., LLC*, No. 6-cv-1694, 2008 WL 4809958, at *2 (S.D. Ind. Oct. 24, 2008). *Oppenheimer* demonstrates the discretionary nature of such a decision. We thus agree with the courts that have said that the district court may elect to shift the cost of class notice (with or without a security bond) to the defendant after the plaintiff's success on the merits has been established. We attach no weight to the fact that the district court took this step without again invoking *Oppenheimer*; its earlier order confirms that the court realized that the principles described in *Oppenheimer* were central to the cost-shifting question. There was no need to repeat that analysis. And although a more robust discussion may be

warranted in cases where, for example, the defendant raises significant concerns about undue hardship, no such argument was presented to the district court here. See *Hunt*, 560 F.3d at 1144 (stating that district courts should "consider the totality of the circumstances to decide whether shifting notice costs is just in that particular case"). Courts have no obligation to explore factors that the parties do not draw to their attention.

The fact that the district court's liability determination may be reversed on appeal does not affect our decision. If the defendant fears that the plaintiffs may not be able to reimburse them, then it should seek a bond (as we noted, a step not taken here). As the Ninth Circuit reasoned in *Hunt*, there is "no reason to suspend a district court's authority to shift notice costs based on a liability determination until after the time period for an appeal on liability has expired." 560 F.3d at 1143; accord Davis *et al*., *supra*, § 12:326 ("A district court in an appropriate case may … shift[ ] class notice costs to the defendant even if the defendant might later be entitled to recover those costs."). It is possible that CWT may appeal the district court's liability determination and prevail, in which case it may seek to recover the notice costs. It is also possible that the district court's decision will be affirmed. For now, though, the district court has ruled on liability and exercised its discretion by shifting notice costs to CWT. We find no abuse of discretion in its decision to do so despite a possible appeal.

Seizing on language from *Oppenheimer*, CWT contends that it should not be forced to pay class-notice costs as a penalty for successfully arguing that the newly added class members should be identified and notified of the class action. We have no quarrel with the point that discouraging a defendant

"from advancing arguments entirely appropriate to the protection of his rights or the rights of absent class members" would be "neither fair nor good policy." *Oppenheimer*, 437 U.S. at 360. But there is nothing in the record to suggest that the district court shifted costs to penalize CWT. It was obliged to furnish notice to the new class members because of Rule 23(c)(2)(B), regardless of what CWT filed. The situation in *Oppenheimer* was different—there, the district court based its decision to shift costs in part because it was the defendant's opposition to a proposed redefinition of the class that necessitated incurring the cost. *Id.* Shifting costs in response to a liability determination is another matter.

As a final note, we again emphasize the unusual way in which this case unfolded. In the mine run of cases, a class-certification decision and class notice come before a decision on the merits. Indeed, that is how this case initially proceeded: the district court ruled on Plaintiffs' class certification motion, ordered notice to the certified class, and then ruled on the cross-motions for summary judgment. The standard operating procedure was disrupted because our intervening decision in *Mussat* prompted the district court to reconsider its initial denial of Plaintiffs' motion to certify a nationwide class. Nothing we have said here would justify a delay in the class-certification decision altogether in the hopes of obtaining a merits ruling and a shift in costs. As Rule 23(c)(1)(A) states, courts "must" rule on class certification "[a]t an early practicable time after a person sues or is sued as a class representative." This case is different precisely because the court properly ruled on class certification, found a class, and proceeded to the merits. When the law changed, it was entitled to revisit the scope of the certified class, and that is what it did.

**III**

We conclude that the district court's cost-allocation order did not represent an abuse of discretion, and so we AFFIRM the order.